William Haywood Gordon
1659 Highway 20 West, Suite 370
McDonough, Georgia 30253
Williamhaywoodgordon@gmail.com

In the Federal District Court
For the Middle District of Georgia- Macon
==============================================================

| | |
|---|---|
| **WILLIAM HAYWOOD GORDON** | **Plaintiff** |
| v | |
| **WELLS FARGO BANK N.A. INC.** | **Jury Trial Demanded** |
| **Defendants,** | |

==============================================================

## COMPLAINT

1. The undersigned (herein after "Gordon"), by and through this Complaint, brings claims against Wells Fargo Bank N.A. Inc. (herein after "Defendant" or "WFB") for unlawful conduct related to the repossession of Gordon's 2019 Chevrolet Tahoe and related financial transactions. Plaintiff seeks both equitable and legal relief for injuries suffered due to Defendant's actions.

## NATURE AND STATEMENT OF THE CASE

2. Gordon purchased a 2019 Chevrolet Tahoe on June 1, 2022, to be used for personal, family and household purposes. The credit transaction was financed through a retail installment sales contract (RISC 1) with Five Star Chevrolet Cadillac, LLC. Unbeknownst to Gordon, Defendant WFB created a second

retail installment sales contract (RISC 2) on June 3, 2022, without Gordon's knowledge or consent. Defendant WFB later used RISC 2 to wrongfully repossess Gordon's vehicle and report inaccurate information to consumer reporting agencies, causing significant financial harm to Gordon.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 due to the diversity of citizenship between the parties and the amount in controversy exceeding seventy-five thousand dollars ($75,000.00 usd).

4. Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. § 1391 (b), as the actions given rise to this claim occurred in Houston County, Georgia.

## PARTIES

6. Gordon is the registered owner and Grantor of RISC 1 and domiciled in Houston County, Georgia.

7. Defendant WFB is a National Association Bank, with its principal office in South Dakota, operating under the jurisdiction of the State of California, doing business in the State of Georgia.

## FACTUAL ALLEGATIONS

Purchasing and Financing

8. On June 1, 2022, Gordon entered into a financing agreement (RISC 1) with Five Star Chevrolet Cadillac, LLC for the purchase of a 2019 Chevrolet Tahoe to be used for personal, family and household purposes. See Exhibit 1.

9. Gordon **executed and granted** the promissory note (RISC 1) to Five Star Chevrolet Cadillac, LLC with the full intent and demands the proceeds be redeemed in lawful money to be used as equal value to the obligation of RISC 1 for set-off.

10. At some point and time after Five Star Chevrolet Cadillac, LLC accepted Gordon's promissory note, it assigned its rights and duties to Defendant WFB.

Unauthorized Creation of RISC 2

11. Records show that on June 3, 2022, Defendant WFB created RISC 2 and corresponding financial book entries under the account number ending in 1873, changing the terms listed in RISC 1, and electronically signing a variation of Gordon's name on RISC 2 without his knowledge or consent.

12. Gordon served an objection to the notice of repossession and a validation of debt request in response to Defendant WFB's letter dated October 3, 2022, which claimed he failed to make payments on the account ending in 1873.

13. Defendant WFB responded to Gordon's validation of debt by providing him with a copy of the credit application used to apply for financing and RISC 2. There was no mention or claim to RISC 1.

Repossession of 2019 Tahoe

14. On December 22, 2022, Defendant WFB seized Gordon's 2019 Tahoe without his knowledge or consent from the Galleria Mall in Centerville, Georgia.

15. On December 23, 2022, Gordon filed a Consumer Financial Protection Bureau complaint (221224-10011413) for wrongful repossession by Defendant WFB using RISC 2 to unjustly deprive Gordon of his property.

16. On December 28, 2022, Gordon received a letter via USPS certified mail from Defendant WFB admitting to taking and being in current possession of his 2019 Tahoe for failure to keep his promises in his auto loan agreement ending in 1873,

17. On that same day, Defendant WFB was served via certified mail with Gordon's demand for the immediate return of his 2019 Tahoe. Defendant WFB failed to return Gordon's Tahoe.

Misrepresentations to Gordon

18. Defendant WFB filed a response to Gordon addressing the CFPB complaint dated January 5th, 2023, stating it was assigned a valid loan (account ending in

1873) and "as for the personal property claim (return of the 2019 Tahoe), **until the vehicle has been paid in full, Wells Fargo is the official lienholder**".

19. Defendant WFB, through its attorney Jennifer Ziemann, further maintained its claims of providing Gordon with an auto loan, him being in default of that loan provided by Defendant WFB, and it was holding (currently at the time of the filing of the document) a valid security interest through filed briefs (5:22-cv-00458 MTT Doc.7 and Doc.8,).

Undisclosed Disposition of Tahoe

20. Unbeknownst to Gordon, while the above referenced litigation was still open and active, Defendant WFB disposed of Gordon's 2019 Tahoe on May 19, 2023, without providing notice to Gordon or the Court.

21. Gordon was not made aware of the disposition until he received a refund issued by Defendant WFB dated August 7, 2023.  The refund was issued without an explanation of the determined refund amount.

22.  In an August 17, 2023, email from Defendant WFB, by and through its attorney Jennifer Ziemann, Gordon was informed that the loan (which it claimed to have provided) and his 2019 Tahoe had **been assigned back to the dealership** and all correspondence should be directed to the dealership's attorney.

23. Defendant WFB failed to disclose to Gordon that had released any actual or alleged security interest on December 27, 2022, and that it had assigned its rights to the dealership in May of 2023.

24. Gordon, despite his due diligence and investigations, was hindered in determining the truth about the security interest as Defendant WFB actively refused to specifically state which RISC upon which it was collecting.

Open Records Request to Dept of Revenue

25. As a result of non-response from dealership, and Defendant WFB's failure to clarify why there were two RISCs, Gordon filed an open records request on the 2019 Chevrolet Tahoe with the Georgia Department of Revenue.

26. The results of the open records request yielded three things; 1) only RISC 1 was on file with Department of Revenue; 2) **a notarized document that Defendant WFB released security interest claims on December 27, 2022**; 3) a copy of Gordon's title unencumbered which was never sent to him.

27. Gordon presented this information to Defendant WFB through another CFPB complaint. Defendant WFB refused to perform any further investigation in a response letter dated November 1, 2023.

Inacurate Consumer Reporting

28. Defendant WFB continually reported incomplete and inaccurate information on Gordon's credit report which differed among the three major reporting agencies from July 2022 until June 2024.

29. As a result of the inaccurate reporting, Gordon filed several disputes, with the last dispute being with Experian (report 4173-6316-77) on May 31, 2024.

30. On June 6, 2024, Experian notified Gordon of changes made by Defendant WFB to correct its inaccurate and incomplete reporting, certifying it was now furnishing accurate and complete data.

31. Gordon filed a follow-up CFPB complaint (240718-15235745) as the information being reported after the reported Experian corrections was inaccurate or incomplete and did not match information previously sent from Defendant WFB to Gordon.

32. In a response to Gordon's CFPB complaint, Defendant WFB validated the loan with Five Star Chevrolet Cadillac (RISC 1) but included RISC 2 as its proof.

33. Defendant WFB also included the alleged signed credit application that gave it authorization to even report on Gordon's consumer report.

34. The credit application sent was from Ally Bank, and it contained an electronic signature that Gordon had not consented to or had knowledge of. Furthermore,

it was different from the credit application sent to him by Defendant WFB in its October 26, 2022, validation letter.

35. Defendant WFB once again failed to address Gordon's concerns of the inaccurate reporting of a charge off status, when alleged "**loan had been re-assigned back to dealership**" in May of 2023.

36. After another investigation, Defendant WFB informed Gordon that the alleged loan (which they still say is valid) was unwound as if never existed, and dealership and Defendant WFB made a business decision to remove the entire credit line from Gordon's consumer profile suggesting the initial investigation

Misrepresentation of a loan

37. In October of 2024, Defendant WFB sent Gordon a copy of the ledger represented by a deposit account ending in 1873. The ledger shows that an amount was deposited on June 3, 2022, creating the account (alleged loan) which is the same date RISC 2 was created.

38. The ledger also shows that on May 19, 2023, the loan ending in number 1873 was charged off and paid for in full both on the same date, which was being reported on Gordon's consumer report.

39. Gordon believes upon information and belief that on May 19, 2023, Defendant WFB enforced an undisclosed security agreement between itself and the

dealership to do what is known in the industry as "unwinding", thus offsetting the liability created from depositing RISC 2 as a financial asset on its books.

## CAUSES OF ACTION FOR WHICH RELIEF CAN BE GRANTED

### COUNT – I – MISREPRESENTATION (Financing Agreement & Terms)

40. Gordon restates the factual allegations as though fully set forth herein.

41. Defendant WFB created RISC 2 without Plaintiff's knowledge or consent, misrepresenting to Gordon the agreement of the terms and conditions of the financing purchase.

42. Gordon refrained from making payments under the belief that he did not need to, as RISC 1 indicated or implied that no payments were required, based on Defendant's WFB claims for payment under RISC 2.

43. Gordon's inaction, caused by his reliance on the language and provisions in RISC 1, resulted in the subsequent financial (harm) consequences of repossession, and negative credit reporting issues.

44. Gordon seeks actual damages in the amount of 54,902.00 usd in lost income, $500.00 usd in costs and fees, and punitive damages for misrepresentation under Georgia law.

### COUNT – II– MISREPRESENTATION (Security Holder)

45. Gordon restates factual allegations as though fully set forth herein.

46. Defendant WFB knowingly and falsely claimed a valid security interest in Gordon's 2019 Tahoe, in statements made to the CFPB and this Court in January of 2023, as well as reporting it on Gordon's title and consumer report, despite having released it on December 27, 2022.

47. Gordon reliance of this false information greatly influence which legal steps he took to regain possession of his 2019 Tahoe, steps that proved detrimental based on the misrepresentation of Defendant WFB being the lien holder.

48. As direct result Gordon suffered financial harm (deprived of his property), shame and humiliation for having to rely (ask) for transportation.

49. Gordon seeks equitable restitution in the amount Defendant WFB sold his 2019 Tahoe ($57,048.58 usd), actual damages for continued shame and humiliation ($15,000.00 usd) and punitive damages for the continued misrepresentations to conceal it was in possession of Gordon's vehicle without a valid security interest.

## **COUNT III – IDENTITY THEFT**

50. Gordon restates the factual allegations as though fully set forth herein.

51. Defendant WFB used Gordon's personal identifying information without his consent to create RISC 2, a fraudulent document.

52. The unauthorized use constitutes financial identity theft under Georgia law in which Gordon has a right to relief.

53. Gordon seeks actual damages ($25,000.00 usd for invasion of privacy), statutory damages, punitive damages, and injunctive relief enjoining Defendant WFB from further acts of financial identity theft.

## COUNT IV – CONTINUED IDENTITY THEFT

54. Gordon restates the factual allegations as though fully set forth herein.

55. Defendant WFB used Gordon's personal identifying information without his consent to create a completed consumer credit application, a fraudulent document which Defendant WFB admits to using as proof of permissible purpose to furnish information to consumer reporting agencies.

56. The unauthorized use constitutes financial identity theft under Georgia law.

57. Gordon seeks actual damages ($25,000.00 usd for invasion of privacy, $50,000.00 usd for the fear of continued unknown use of my personal identifiable information) statutory damages, punitive damages, and injunctive relief enjoining Defendant WFB from further continued acts of financial identity theft.

## COUNT V- FAIR CREDIT REPORTING ACT VIOLATION (15 U.S.C. 1681 et seq)

58. Gordon restates the factual allegations as though fully set forth herein.

59. Gordon filed dispute with CRA claiming Defendant WFB was reporting inaccurate and incomplete information on his credit report.

60. After being notified by the CRA of Gordon's dispute, the information was corrected and verified by Defendant WFB.

61. However, when Gordon filed a subsequent complaint in August 2024, Defendant WFB deleted the entire account from his credit report rather than properly investigating and correcting the remaining inaccuracies.

62. This inconsistent conduct demonstrates Defendant WFB's failure to perform its statutory duty to reasonably investigate the consumer dispute.

63. As a result, Gordon suffered financial and reputational harm and is entitled to actual damages, statutory damages, and punitive damages from Defendant WFB's willful violation of the FCRA.

64. Gordon seeks actual damages ($10,000.00 usd for invasion of privacy and $10,000.00 usd for defamation of credit character which resulted in higher APRs and denial of credit), statutory damages ($1000.00 usd), punitive damages along with costs and fees pursuant to the FCRA.

## COUNT VI – CONVERSION

65. Gordon restates factual allegations as though fully stated herein.

66. Gordon was the rightful owner of his 2019 Tahoe at the time of Defendant WFB wrongfully took possession of his property without legal justification (use of RISC 2).

67. Gordon demanded return of his vehicle which was denied on January 5th, 2023, in response letter from Defendant WFB through the CFPB.

68. As a direct result of Defendant WFB's acts and omission, Gordon has been deprived of his ownership and possessory rights to his 2019 Tahoe in which he has a right to relief.

69. Gordon seeks actual damages, the fair market value of the 2019 Tahoe, $10,000.00 usd for the interference with his property rights, the cost of replacing the 2019 Tahoe, and treble damages for the willful conversion of Gordon's property under Georgia law.

## COUNT VI – GEORGIA FAIR BUSINESS PRACTICES ACT

70. Gordon restates factual allegations as though fully stated herein.

71. Gordon's 2019 Tahoe was property purchased in a consumer credit transaction to be used for personal, family, and household purposes.

72. Defendant WFB effects the general consuming public by providing financial products in connections within the automobile marketplace throughout the State of Georgia.

73. Defendant WFB engaged in unfair and deceptive practices by creating RISC 2 without Gordon's knowledge or consent.

74. Defendant WFB engaged in further unfair and deceptive practices by misusing Gordon's personal identifiable information to repossess his 2019 Tahoe.

75. Defendant WFB further engaged in unfair and deceptive practices by creating a fraudulent credit application and using it as justification to report knowingly false information on Gordon's consumer report.

76. These intentional acts arising out of a consumer credit transaction constitute unfair and deceptive practices prohibited by the GFBPA in which Gordon is entitled to relief.

77. Gordon seeks actual and compensatory damages in the amount of $25,000.00 usd from harassment, pain and suffering from perpetual fear of his private information being utilized to create agreements without his consent and knowledge, injunctive relief and punitive damages as afforded under the GFBPA.

## **COUNT VII – FAILURE TO PROVIDE ACCOUNTING (UCC-9)**

78. Gordon restates factual allegations as though fully stated herein.

79. Records show that Defendant WFB is the security interest holder on Gordon's 2019 Tahoe.

80. Gordon served a request for full statement of account upon Defendant WFB via fax and certified mail pursuant to Article 9 of the Georgia UCC.

81. Defendant WFB had a duty and failed to respond within fourteen (14) days constitute a violation under the uniform commercial code of Georgia, Article 9.

82. As a result of Defendant WFB failure proper accounting, Gordon has been unable to verify the lawful disposition of the vehicle and the fairness of the refund issue.

83. Gordon has suffered from financial uncertainty and continued harm due to Defendant WFB's failure to comply with its statutory duties and obligations which entitles Gordon to seek relief under Article 9 of the Georgia UCC.

84. Gordon seeks actual damages ($15,251.47 usd difference in finance charge), statutory damages ($14,026.00 usd (financing charge) plus $5,490.00 usd- ten (10%) of principal) for failure to comply with Article 9, and fees and costs.

## COUNT VIII – BREACH OF CONTRACT

85. Gordon restates factual allegations as though fully set forth herein.

86. Defendant WFB as assignee of Five Star Chevrolet Cadillac, LLC had a legal duty to adhere to the terms and conditions agreed upon in RISC 1.

87. Defendant WFB's breached its contractual obligations under RISC 1 by creating RISC 2 and repossessing Gordon's 2019 Tahoe based on the fraudulent document.

88. Defendant WFB further breached the contractual obligations under RISC 1 when it failed to supply Gordon with full accounting upon request within the required fourteen (14) days.

89. As a direct result of this willful and intentional material failure to comply with RISC 1, Gordon has been injured and is entitled to relief under the laws of the State of Georgia.

90. Gordon seeks actual damages ($54,904.00 for loss of investment) and compensatory damages ($25,000.00 for pain and suffering from debilitating stress) resulting from Defendant WFB's material breach of contract under Georgia law.

## **PRAYER FOR RELIEF**

Whereas Gordon moves this Court for the following relief:

a. Judgment in favor of Gordon that Defendant WFB is liable to Gordon for damages in Count I- XIII.

b. Judgement in favor of Gordon for equitable restitution (all proceeds arising from RISC 2) through commercial sale, fractional banking, investments (pooling agreements), assignment, redemption, or any other financial system used by Defendant WFB.

c. Judgement in favor of Gordon for actual and compensatory damages for financial harm, loss of vehicle, rental cost, emotional distress, and pain and suffering arising from debilitating stress-related back pain experienced from dealing with Defendant WFB unfair and deceptive acts and practices as calculated and listed in each count or as determined by a jury.

d. Judgment for each statutory violation and maximum statutory damages allowed per Federal and State law.

e. Punitive Damages in the amount of $150,000.00 usd or as determined by a jury to deter future conduct of Defendant WFB for the willful and intentional acts on misrepresentation, identity theft, and unlawful trespasses in consumer credit transactions.

f. Injunctive relief to prevent Defendant WFB and its agents from engaging in further unlawful acts

g. Judgement for fees and costs related to this litigation.

h. Any further lawful and/or equitable relief deem just and fair by this Court.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable by right pursuant to Rule 38 of the Federal Rules of Civil Procedure, and both the United States and Georgia Constitution.

This complaint is filed in good faith, with good intentions, and good consciousness with no intent to harass, delay, or harm another, but only to seek relief for trespasses against me. This complaint is signed and verified by my hand and will on this ___29th___ day of October 2024.

_William Haywood Gordon_ – Registered Owner

This Complaint has been completed in Times New Roman 14

GORDON V WELLS FARGO BANK N.A. INC -17